## WILLIAMS et al. v. GREAT LAKES TERMINAL WAREHOUSE CO. OF TOLEDO et al.

### PAVEY et al. v. SAME.

#### Nos. 7380, 7390.

Circuit Court of Appeals, Sixth Circuit.

Dec. 18, 1936.

116

H. W. Morgan, of Toledo, Ohio (Williams, Eversman & Morgan, of Toledo, Ohio, on the brief), for appellants Williams and others.

E. C. Kindleberger, of New York City (Townsend & Kindleberger, of New York City, on the brief), for appellants Pavey and others.

Geo. F. Medill and D. F. Melhorn, both of Toledo, Ohio (E. G. Davies and Marshall, Melhorn & Marlar, all of Toledo, Ohio, on the brief), for appellees.

Before HICKS, SIMONS, and ALLEN, Circuit Judges.

HICKS, Circuit Judge.

These appeals grow out of the reorganization of Great Lakes Warehouse Company of Toledo, under section 77B of the Bankruptcy Act, 11 U.S.C. § 207 (11 U.S.C.A. § 207). Appellants Williams, Eversman, and Morgan, attorneys, appealed from an order denying them an allowance for professional services. Townsend and Kindleberger, attorneys, appealed from a similar order, and Pavey and Hill, styled the "Pavey Committee,"

likewise appealed from an order denying its application for allowances.

The debtor was incorporated in 1927, to engage in the cold storage and warehouse business. The construction of its buildings was financed by an issue of two and one-half million dollars of first mortgage, fifteen-year, 6½ per cent. Sinking Fund Gold bonds, and of $850,000 of ten-year, 7 per cent., General Mortgage Convertible Gold debentures. On March 1, 1930, it defaulted in the payment of interest upon both types of securities. Two days later the Pavey Committee was formed to represent and protect holders of first mortgage bonds. This committee represented holders of $306,600 par value of these bonds, or about 13 per cent. of the total issue, which were placed with a trust company pursuant to a deposit agreement dated March 13, 1930. This agreement contained the following provision:

"The Committee shall have power to appoint * * * such counsel, attorneys * * * as it may deem necessary, * * * and may pay such * * * counsel, attorneys, * * * reasonable compensation for their services, and all such compensation shall be included in the expenses of the Committee; * * * it being, however, expressly understood and agreed that no action of the Committee shall pledge the individual credit of the depositors or of the members of the Committee or impose any personal liability upon them or any of them and that the pro rata share of all expenses and obligations chargeable to any original bond or to the cash, securities and/or other property received in place or on account of it shall not exceed 5% of the par value of that original bond.

"* * * No deposited bond and no property or securities of any reorganized company shall be delivered and no cash payment shall be made to the depositors entitled to receive the same until the pro rata proportion of all said expenses and obligations * * * applicable to the bonds originally deposited shall have been fully paid. * * *"

Appellants Williams, Eversman, and Morgan make no claim for services rendered in connection with the plan of reorganization. They seek compensation for services rendered the Pavey Committee prior to July 18, 1931, or about three years before the enactment of section 77B. They insist that to secure payment there-

for they are entitled to a lien upon the estate of the debtor by virtue of the final paragraph of the provision quoted and that by virtue of paragraph 7 of the plan the trustee of the debtor should be required to discharge the lien by an appropriate allowance. Their claim cannot be sustained.

Paragraph 7 is as follows: "The debtor or its trustees shall pay or the corporation to be formed shall assume and immediately pay all of the expenses and obligations preliminary to or resulting from the debtor's reorganization, including, but without limitation, the administration costs of this proceeding, the expense and compensation of the members of and counsel for any protective committees representing creditors, secured or unsecured or stockholders of the debtor, for their services whensoever rendered, the expenses and compensation of the reorganization manager, the expenses and compensation of the attorneys for the debtor and the expenses and compensation of the attorneys for the debtor's trustees, all, however, as the same may be allowed or determined fair and reasonable by the court."

We need not consider whether the deposit agreement fixed a lien upon the deposited bonds to secure appellants' compensation. Obviously no lien was created thereby upon the estate or assets of the debtor. Further, paragraph 7 limits the compensation of counsel of any protective committee to services rendered "preliminary to or resulting from the debtor's reorganization." The phrase "for their services whensoever rendered" has reference to those services which are included in "the expenses and obligations preliminary to or resulting from the debtor's reorganization" and then only such as "may be allowed or determined fair and reasonable by the court."

We think that paragraph 7 was drawn in view of section 77B of the act (subdivision (c), 11 U.S.C.A. § 207(c), which authorizes the judge to allow reasonable compensation for services rendered "in connection with the proceeding and the plan." It did not contemplate that counsel should be compensated out of the estate of the debtor for services rendered long prior to the passage of the act and which had no connection with the proceedings thereunder.

■ We find no reason to disagree with the District Judge in the denial of any allowance to the Pavey Committee. This committee was composed of Frank D. Pavey and James N. B. Hill. Mr. Pavey was the active member of it. Substantially all the service of this committee was rendered before July, 1931, in an effort to protect the bondholders whom it represented. It commenced a suit in equity in the nature of a creditors' bill against the debtor, the gist of which was that the debtor's assets were being dissipated by its management, but on July 1, 1931, it dismissed this bill upon its own motion. For such services it should look for payment to those who employed it. It is illogical to say that this character of service, rendered so long before the enactment of section 77B, was incurred "in connection with the proceeding and the plan" of reorganization. True, the court did allow the expenses of the Pavey Committee, and from this it might be inferred that the services of the committee contributed to the plan but such inference is weakened if not entirely destroyed by the finding of the court (with which we are in accord) that they did not benefit the reorganization. About the only connection the Pavey Committee had with the plan was to approve its provisions as it was being worked out by counsel and agree to its completed form in behalf of the bondholders whom it represented.

The claim of Townsend and Kindleberger has stronger support. This firm was employed by the Pavey Committee in March, 1931, and served until November of that year; but it makes no claim for an allowance for these services. These appellants were not active again until September, 1934.

About that time a second mortgage bondholders committee, called the "Converse Committee," was formed. This committee represented $1,902,000 face value of the first mortgage bonds, an amount slightly in excess of 66 per cent. of the total issue, which were placed with a bank pursuant to a deposit agreement. The Converse Committee was represented by two law firms, and Mr. Landis, of one of them, had active charge of the legal work of the committee and later represented the debtor. Soon after its organization, L. E. Yeager, at the request of the Converse Committee, took charge of the management of the debtor's business. He and Mr. Landis were instrumental in the formation of the reorganization plan and

participated actively in the court proceedings which culminated in its approval.

Very briefly, the plan called for the surrender of all stock, first mortgage bonds and convertible debentures of the old corporation, and the formation of a new one whose stockholders would be the former bond and debenture holders. The other creditors of the debtor were unaffected. For the purpose of continuing its existing management, the common stock of the new corporation was to be held in a voting trust for a limited period and the stockholders were to hold voting trust certificates during that period.

Appellants Townsend and Kindleberger co-operated in the formation of the plan and in working out the details after its presentation to the court. The plan was prepared and submitted to the court on January 26, 1935, the court appointed a special master to hold a hearing thereon, and it was approved on May 9, 1935. As stated in Re Memphis St. Ry. Co. (Fuller v. Memphis Street Railway Co.) 86 F. (2d) 891 (C.C.A.), decided June 4, 1936: "Such work cannot be done in a few days; it requires skill and patience." The Converse Committee and its counsel were compensated by proper allowances about which there was no complaint. Appellants, Townsend and Kindleberger, were denied compensation upon the ground that "their services were remote in time and purpose and did not benefit the reorganization."

We have reached a contrary conclusion.

When it became apparent in November, 1934, after section 77B had been enacted in June, that a reorganization was possible under the act, a great many conferences were had between Mr. Landis, Mr. Yeager, and Messrs. Townsend and Kindleberger. Mr. Landis testified that, in connection with the work he did, he had many occasions to confer with these appellants on the preparation of papers and questions of policy; that there were periods when these communications were of almost daily occurrence and sometimes two or three times a day. Mr. Kindleberger testified that he and his partner spent many hours going over the papers with Mr. Landis in an effort to reach an agreement upon disputed questions. He testified in detail touching different features of the plan which were proposed, and either accepted or rejected, and that in this work his firm consumed over three hun-

dred hours. Mr. Yeager also testified that in all the proceedings there were many conferences between counsel with regard to each paper drawn. When the plan was completed and ready for presentation, it contained a provision that the debtor or its trustee should pay the expense and compensation of counsel "for any protective committees representing creditors, secured or unsecured. * * *" While this provision was not binding upon the court in determining whether counsel were entitled to an allowance, it did present a reasonable basis upon which these appellants would continue their services with the expectation of payment.

 We conclude that appellants rendered service "in connection with the proceeding and the plan" (section 77B, subd. (c), 11 U.S.C.A. § 207(c) for which they should have had an allowance; that their co-operation with counsel for the Converse Committee and the debtor in bringing the reorganization plan to a culmination was in the interest of the debtor and for its benefit. The order of disallowance is therefore set aside, and the cause remanded to the District Court, with directions to order such reasonable allowance to appellants as to the court may seem appropriate.

The order of the District Court denying the claims of Williams, Eversman, and Morgan and of the Pavey Committee is affirmed.