In re DETROIT INTERNATIONAL
BRIDGE CO.
Nos. 8527–8532.

Circuit Court of Appeals, Sixth Circuit.
April 5, 1940.

John C. Bills, of Detroit, Mich. (Butzel, Eaman, Long, Gust & Bills, of Detroit, Mich., and Cook, Nathan, Lehman & Greenman, of New York City, on the brief), for appellants Butzel, Eaman, Long, Gust & Bills, and Cook, Nathan, Lehman & Greenman.

Edward K. Hanlon, of New York City (Beekman, Bogue, Stephens & Black, of New York City, on the brief), for appellants Guaranty Trust Co. and others.

Clifford P. Case, of New York City (Simpson, Thacher & Bartlett, of New

York City, on the brief), for appellants Simpson, Thacher & Bartlett and others.

Robert H. Winn, of Washington, D. C., for Securities and Exchange Commission.

Before HICKS, ALLEN, and HAMILTON, Circuit Judges.

HICKS, Circuit Judge.

These appeals were heard together upon the original papers, Sec. 250, Chandler Act, 11 U.S.C.A. § 650, and involve the question whether the District Court abused its discretion (Dickinson Industrial Site, Inc., v. Cowan et al., Supreme Court March 11, 1940, 60 S.Ct. 595, 84 L.Ed. —— ) in the allowance and disallowance of applications of: (1) counsel for the debtor; (2) a bondholders' committee and its counsel; (3) a debentures' committee and its counsel; and (4) depositaries, for fees, services and expenses in the reorganization of Detroit International Bridge Company.

The Bridge Company, debtor, a Michigan corporation, organized in 1927, owns and operates directly (and indirectly through a wholly owned subsidiary, the Canadian Transit Company, a Canadian corporation), the bridge known as the "Ambassador Bridge" across the Detroit river between Detroit and Windsor, Canada. The debtor owns that part of the properties on the American side and the subsidiary that part on the Canadian side of the international boundary. It is one of the world's largest bridges for vehicular and pedestrian travel. It was opened about the close of the year 1929 and was well managed, but, for reasons immaterial to relate, was not a financial success.

It became financially embarrassed early in 1931. It then had outstanding: $11,978,000 of first mortgage bonds, the joint obligation of the debtor and its subsidiary; $8,000,000 of gold debentures, the obligation of the debtor only; $1,405,300 of preferred stock ($100.00 par value); and 100,000 shares of no par value common stock.

In 1930 its gross operating revenue was $892,042.59 and in 1931 its annual interest charges were $1,338,570.00. It defaulted in the payment of interest on its debentures August 1, 1930, and, on its bonds in February, 1931. This gave rise to the organization in 1931 of both the bondholders' and debentures' committees. These committees have been represented since that time by appellants Beekman, Bogue, Stephens & Black, and Simpson, Thacher & Bartlett, respectively, as counsel.

Section 77B, 11 U.S.C.A. § 207, did not become effective until June 7, 1934, and reorganization in bankruptcy was of course not contemplated before that date, but early in 1938 the accrued and unpaid interest on the bonds and debentures amounted to $9,984,632.00. Taxes, including interest and penalties from 1930 to 1938, amounted to $884,073.94 and the liens therefor had priority over the bonds and debentures. The bridge property on the American side was about to be sold for these taxes. This was a matter of imminent peril not only to the debtor but to the security holders as well. Confronted with this situation, the debtor, in February, 1938, employed appellants Butzel, Eaman, Long, Gust & Bills, and Cook, Nathan, Lehman & Greenman as counsel.

Counsel for the debtor and security holders decided upon the following procedure: (1) to institute reorganization proceedings under Sec. 77B; (2) to institute concurrently a similar proceeding for the subsidiary, the Canadian Transit Company, in the appropriate Canadian court; and (3) to secure, if possible, a substantial reduction of past due taxes and a new method of assessment for the future by which the taxes would be sufficiently low to enable the debtor to pay them.

The reorganization plan was proposed by appellant attorneys. The preliminary work, no small task, incident to the preparation of the reorganization petition, was commenced early in 1938 and was participated in by all counsel. The petition itself was prepared by appellants Beekman, Bogue, Stephens & Black and filed on May 26, 1938, and on the same date the same counsel, assisted by Canadian counsel, filed a similar petition in Canada under "The Dominion Companies' Creditors Arrangement Act."

The tax matter was the crux of the situation. Unless it could be settled there would be nothing to reorganize. It was settled through the efforts of counsel for the debtor. It is unnecessary to detail the numerous meetings, hearings, conferences and negotiations with the various taxing authorities of Michigan and De-

troit; conferences with the representatives of the bondholders and debentureholders, and with the officers and managers of the debtor itself, together with the preparation of numerous briefs and memoranda and writing of many letters, and many telephone conversations, all of which brought about the result. The negotiations were not only time-consuming but required tact, skill and patience.

The results were, first, a reduction in accrued taxes, interest and penalties of $623,055.38; and second, a new basis of assessment along the lines indicated in the City of Detroit v. Detroit & Canada Tunnel Co., 6 Cir., 92 F.2d 833, by which there was effected a saving in taxes of $68,000 annually for future years. The tax question out of the way, the reorganization could and did proceed swiftly and in order. The plan was confirmed June 27, 1939. The debtor emerged with $429,000 in cash and a bridge conservatively valued at $2,600,000 with the prospect of an annual net profit of $125,000. The security holders and stockholders all of course lost a large amount of money, since the bridge cost around seventeen million dollars, but each holder of a thousand dollar bond received sixteen shares of common stock and each holder of a thousand dollar debenture received two shares. Each holder of two shares of preferred stock received a warrant entitling him to subscribe for common stock at $12.00 a share, and each holder of forty shares of old common stock was entitled to subscribe for one share of the new at the same price.

Exclusive of the tax controversy, appellants Beekman, Bogue, Stephens & Black performed the principal share of the services incident to the reorganization. Messrs. Bogue and Soper of the firm were particularly skilled in reorganization matters. Counsel for the debtor and the debentures' committee, however, shared effectively in the promulgation and prosecution of the plan. Counsel for the debentures' committee filed intervention proceedings for their client. In the early stages large economies were effected and skilled management was insured by dispensing with the appointment of a trustee and continuing the debtor in possession and operation. The proceeding was unique in that it involved synchronized action in the courts of two countries under applicable statutes. While the Canadian proceedings were filed by Canadian counsel, those in charge on the American side were charged with full responsibility. During the entire reorganization appellants representing the debtor were acting as counsel for it in the management and operation of the business. With the enactment of the Chandler Law in June, 1938, 11 U.S.C.A. § 1 et seq., it was the work of all counsel to conduct the proceedings in harmony with the provisions of the Act. The Company was reorganized under its original charter to protect it against possible losses of any of its franchises.

Counsel for the debtor, for the bondholders' committee and for the debentures' committee, sought allowances—for services in the amounts of $65,000, $25,000 and $6,000 respectively. Each set of counsel sought reimbursement for expenses. The expenses were allowed by the court. The court allowed counsel for the debtor, for the bondholders' committee and the debentures' committee $17,546.35, $2,351.49 and $763.66 respectively, for their services. Counsel were dissatisfied with these allowances, hence these appeals.

The court recognized counsels' right to allowances and expenses by virtue of Sec. 77B, sub. c, subsec. 9 of the Bankruptcy Act, 11 U.S.C.A. § 207, sub. c(9), and of Sec. 241(4) of the Chandler Act, 11 U.S.C.A. § 641(4). It also paid tribute to the high character of the work done and the results achieved.

█ Where the compensation of an attorney is to be fixed by the court, the attorney is entitled to the fair and reasonable value of the services rendered. Among the circumstances to be considered in fixing the compensation are,—the extent and nature of the services; the labor, time and trouble involved; the results achieved; the character and importance of the matter in hand; the value of the property or the amount of money involved; the learning, skill and experience exercised; whether the fee is absolute or contingent; and the ability to pay.

█ Measured by these tests we think that the allowances to counsel were below the minima indicated by judicial discretion. The Securities and Exchange Commission became a party to the proceeding by virtue of the provisions of the Chandler Act and at the request of

the court its counsel recommended allowances as follows: To debtor's attorneys, $55,000; to attorneys for the bondholders' and debentureholders' committees, $22,500 and $6,000 respectively. While such recommendations are entitled to weight, they are not conclusive because, after all, the court must determine for itself the fair value of the services rendered. It follows, too, that the court should not be influenced unduly by the fact that neither the debtor nor any bondholder or debentureholder or creditor resisted the applications for the various allowances.

The bondholders' committee made application for allowances as follows: Mr. Hibbard, $11,500; Messrs. Ballinger and Ellis, $2,000 each; and Messrs. Long and Stanley $1,000 each, or a total of $17,500. It also requested reimbursement for expenses in the sum of $8,404.03. The Securities and Exchange Commission recommended an allowance of $12,500 for services and $7,880.72 for expenses.

The debentureholders' committee requested an allowance of $4,000 and $279.83 for expenses. These amounts were recommended by the Securities and Exchange Commission. The court disallowed the claims of both committees in their entirety upon the ground that neither committee rendered any services which contributed to the reorganization plan or were beneficial to the estate. We do not think that either committee has made out a prima facie case of inequitable treatment. Dickinson Industrial Site, Inc. v. Cowan et al., supra. There was certainly no abuse of discretion in the disallowance of any claims of these committees for services and expenses prior to the enactment of 77B or even prior to the conception of reorganization thereunder in 1938. See Williams v. Great Lakes Terminal Warehouse Co., 6 Cir., 87 F.2d 115, 117. Mr. Soper, of the firm of Beekman, Bogue, Stephens & Black, acted as secretary of the bondholders' committee and did substantially all of its work after the latter date. It does not appear that after that time the debentureholders' committee particularly participated except to approve the plan of reorganization and changes in it as were from time to time proposed by counsel. The claims of the committees are disallowed.

Guaranty Trust Company of New York, a depositary for bondholders, sought an allowance of $10,072.64 for services and $51.23 for expenses. The Securities and Exchange Commission recommended $5,885.89 for services and the payment of the expense account. The Toronto General Trust Corporation, a depositary in Canada for bondholders, sought an allowance of $3,787.38 for services. Counsel for the Securities and Exchange Commission recommended the payment of $2,702.88. Marine Midland Trust Company of New York, a depositary for debentureholders, sought an allowance of $9,050.09 and $205.67 for expenses. The Securities and Exchange Commission recommended an allowance of $3,550.09 and the payment of the expense account. National Trust Company, Ltd., a depositary for debentureholders in Canada, sought an allowance of $3,233.68 for services and $69.37 for expenses. The Securities and Exchange Commission recommended an allowance of $2,097 and the payment of the expense account.

The court denied these applications altogether.

The far greater part of the services of these depositaries was rendered before the plan of reorganization was originated but we think it quite clear that the depositaries did render valuable services in connection with the reorganization proceedings. In In re Milwaukee Lodge, 7 Cir., 83 F.2d 662, 665 it was said: "A responsible depositary, to whose physical custody the many bondholders may intrust their bonds pending final adjustment, is often an instrumentality of recognized convenience and necessity in such matters, and in serving such purpose is in general entitled to reasonable compensation."

We do not go into detail touching the number of bonds or debentures held by the depositaries or their work in connection therewith. It is sufficient to say that it occurs to us that the reorganization plan could not very effectively have been prosecuted without their aid.

Upon full consideration, it is now therefore ordered:

1. That the firm of Butzel, Eaman, Long, Gust & Bills, and the firm of Cook, Nathan, Lehman & Greenman, attorneys for the debtor, be allowed, jointly, in full for their services the sum of $50,000 and $1,953.65 for disbursements.

2. That the firm of Beekman, Bogue, Stephens & Black, attorneys for first mort-

gage bondholders' committee, be allowed in full for their services, the sum of $12,500 and $1,148.51 for expenses.

3. That the firm of Simpson, Thacher & Bartlett, attorneys for debentureholders' committee, be allowed in full for their services the sum of $2,500 and $236.34 for expenses.

4. That Guaranty Trust Company of New York, depositary for first mortgage bondholders, be allowed the sum of $1,500 in full for its services.

5. That the Toronto General Trust Corporation, depositary for first mortgage bondholders, be allowed the sum of $1,000 in full for its services.

6. That the Marine Midland Trust Company of New York and National Trust Company, Ltd., depositaries for debentureholders, each be allowed the sum of $1,000 for their services.

These allowances will be paid out of the cash on hand in the treasury of the debtor.

The successful appellants are allowed the taxable costs accrued to them on these appeals.