527 F.2d 1031
 In the Matter of Kathleen Boren MULLENDORE and Katsy
Mullendore Mecom, Executrix of the Estate of
Eugene C. Mullendore, Deceased, Debtors.
Gene STIPE and Willand M. Gotcher, Appellants and Cross-Appellees,
v.
Kathleen Boren MULLENDORE and Katsy Mullendore Mecom,
Executrix of the Estate of Eugene C. Mullendore,
Deceased, Appellees and Cross-Appellants.
 Nos. 74--1778, 74--1779.
 United States Court of Appeals,
Tenth Circuit.
 Argued July 10, 1975.
Decided Dec. 31, 1975.
 
 Irvine E. Ungerman, Tulsa, Okl., for appellants and cross-appellees.
 Segal V. Wheatley, San Antonio, Tex., for appellees and cross-appellants.
 Before CLARK,* Associate Justice, and HILL and BARRETT, Circuit judges.
 HILL, Circuit Judge.
 
 
 1
 This case presents questions resulting from an order of the United States District Court for the Northern District of Oklahoma awarding attorneys' fees of $365,000 to appellants, Gene Stipe and Willard Gotcher, and their two associates, Howard Edmondson[1] and Irvine Ungerman. These fees were awarded for the services of the four attorneys in representing Eugene and Kathleen Mullendore (hereinafter the 'senior Mullendores'), debtors not in possession,[2] in a Chapter XI proceeding.
 
 
 2
 On November 5, 1970, appellants were employed by the senior Mullendores to collect all or as much as possible of the proceeds of life insurance policies having a combined face value of $15 million. These policies had insured the life of the senior Mullendores' deceased son, E. C. Mullendore, III. The policies were all owned by the son's wife, Linda, and she was designated as the beneficiary. At this time, the senior Mullendores were confronted with large debts held by both secured and unsecured creditors. Appellants received no retainer and no written agreement of any fee arrangement was made.
 
 
 3
 Appellants proceeded to work on the problem. On December 15, 1970, an agreement with Linda and the senior Mullendores was executed and provided, inter alia, that Linda would retain $5 million of the life insurance proceeds and the remainder would go to the senior Mullendores. On April 15, 1971, the senior Mullendores and their daughter and her husband, Katsy and John Mecom, Jr., executed an agreement with appellants concerning the attorneys' fees. That agreement provided, inter alia, that appellants would receive 20% of the amount recovered from an action against the insurance companies and Linda Mullendore. Also on April 15, 1971, a Chapter XI petition was filed on behalf of the senior Mullendores by appellants and Edmondson (now associated in the matter with an understanding he would share in the contingent fee arrangement). Two secured creditors had claims for over $8 million. Because of the complexity of the matters, appellants and Edmondson hired Ungerman, who had extensive experience in bankruptcy matters; Ungerman was to be paid by the other three attorneys regardless of the litigation's outcome.
 
 
 4
 Amended pleadings were filed on April 27, 1971, to effectuate the strategy decided upon: proceed under Chapter XI and have the secured creditors restrained by court orders. The district court appointed co-receivers in an order filed on May 11, 1971.
 
 
 5
 Linda had renounced the agreement with the senior Mullendores and had brought suit upon the insurance policies. The attorneys for the debtors sought to intervene in those suits and were successful, as were the receivers.[3] Subsequently, Linda was prevailed upon to reaffirm the contract.[4] It had become apparent that the maximum possible liability on the insurance policies would be $10 million. After negotiations, a settlement agreement for $8 million was approved. This decreased recovery meant that a new agreement with Linda had to be effected.
 
 
 6
 On December 22, 1971, a new agreement was entered into by the receivers, the senior Mullendores, and Linda. Under this new agreement, Linda received $3 million and the receivers were given $5 million. Title to all land acquired and held in the names of E. C. Mullendore, III, or any of his children when E. C. died was to be conveyed to the receivers. Linda disclaimed all right, title and interest to all livestock, farm products, equipment and other personalty used in connection with the ranches. All contractual rights relating to the ranching and farming operations were assigned or transferred to the receivers. Linda disclaimed all right, title and interest in the proceeds from the liquidation of a quarter horse operation. In exchange, the receivers and senior Mullendores agreed to pay, inter alia, the following obligations: all claims secured by valid assignments of interests in the insurance policies; all obligations incurred by Linda prior to E. C.'s death; all obligations owed by E. C. and his estate which Linda was liable for either jointly or severally; all remaining obligations of E. C. and his estate; all taxes of E. C. or Linda due or owing at the time of E. C.'s death and all taxes due upon or since his death, or to become due, which would be owed by E. C.'s estate or for which Linda or her property might be liable; all expenses previously or subsequently incurred in connection with the ranching operations; and unpaid expenses of administration of the estate of E. C.
 
 
 7
 A modified Chapter XI plan was presented on June 17, 1973. This plan called for the debtors' taking out a $4 million loan secured by a mortgage on the remaining 35,000 acres of the ranch. A long-term lease would service this debt and provide the senior Mullendores with an annual income. All creditors would be paid. The plan was approved by the court.
 
 
 8
 On August 6, 1973, appellants filed an amended application for an allowance of $1 million for attorneys' fees. The request was based on 20% of the $5 million insurance recovery and the 6,168 hours expended by all four attorneys. The application stated that approximately $40,000 of expenses were unpaid. On September 5, 1973, the senior Mullendores and the Mecoms, through other counsel,[5] filed a response and brief challenging the application. A hearing was held; before evidence was presented on this application, the trial judge indicated the contingent fee contract would not be considered in arriving at a fee because of 18 U.S.C. § 155 and 11 U.S.C. § 96(d), and that the allowance would be considered on a quantum meruit basis.[6] Following the evidence, the trial judge allowed interim fees and took under advisement the determination of the full fee allowance. Interim fees were again allowed on May 17, 1974. On August 27, 1974, additional fees were allowed which brought the total allowance to $365,000, which the trial judge determined would be the total allowed on the application of appellants.
 
 
 9
 We first consider the cross-appeal because an adverse determination to appellants on any of the grounds asserted therein would dispose of the entire controversy. Cross-appellants, Kathleen Mullendore and Katsy Mecom, claim the trial court erred in awarding appellants any fees. Initially, cross-appellants argue appellants failed to comply with General Order 44 and their failure bars the court from awarding them any compensation for their services. Appellants do not contend this order was complied with, but do argue disallowance is discretionary under the order and the order does not cover attorneys for debtors in possession.
 
 
 10
 General Order 44 provided in pertinent part:[7]
 
 
 11
 No attorney for a receiver, trustee or debtor in possession shall be appointed except upon the order of the court, which shall be granted only upon the verified petition of the receiver, trustee or debtor in possession . . ..
 
 
 12
 We agree with appellants that General Order 44 does not cover attorneys for a debtor not in possession. This same conclusion was reached by the Sixth Circuit in Cle-Ware Industries, Inc. v. Sokolsky, 493 F.2d 863 (1974), cert. denied, 419 U.S. 829, 95 S.Ct. 50, 42 L.Ed.2d 53 (1974), where the court stated, 'This provision (General Order 44) does not on its face cover an attorney for a debtor who is not in possession.' The Sixth Circuit distinguished In re Hydrocarbon Chemicals, Inc., 411 F.2d 203 (3rd Cir. 1969), cert. denied, 396 U.S. 823, 90 S.Ct. 66, 24 L.Ed.2d 74 (1969), where compensation was denied counsel for a debtor's counsel based on failure to comply with General Order 44. In Hydrocarbon Chemicals, a divided court had determined the work performed by counsel of the counsel for the debtor was properly the work of counsel for the receiver and the trustee.[8] In the instant matter, there was representation on behalf of the debtors, who were not in possession except for a very limited time. In a Chapter XI proceeding, there are areas where counsel for a debtor not in possession legitimately should function. To the extent that the work of such counsel benefits the estate, compensation is normally allowed on proper petition.[9] Consequently, we hold that failure to comply with General Order 44 does not prevent appellants from receiving compensation.
 
 
 13
 Cross-appellants assert that 11 U.S.C. § 102(c) prevents appellants from receiving any compensation. They argue that appellants failed to obtain a prior court order permitting the hiring of Edmondson and Ungerman and that appellants violated § 102(c) in entering into a compensation sharing arrangement with these two additional attorneys. The statutory provision relied upon (§ 102(c)) provides in pertinent part:
 
 
 14
 A custodian, receiver, or trustee or the attorney for any of them, or any other attorney, rendering services in a proceeding under this title or in connection with such proceeding, shall not in any form or guise share or agree to share his compensation for such services with any person not contributing thereto, or share or agree to share in the compensation of any person rendering services in a proceeding under this title or in connection with such proceeding, to which services he has not contributed . . ..
 
 
 15
 No authority applicable at the time of the instant proceedings has been cited which required a prior court order for the hiring of Ungerman and Edmondson as additional attorneys for the debtors not in possession. The trial court was aware of the participation of all four attorneys in this matter; there was certainly nothing surreptitious about the engagement of Edmondson and Ungerman. All four attorneys contributed services which takes them out of the clear language of § 102(c). Bankruptcy Rule 219 which sets new disclosure requirements for attorneys for bankrupts was not effective at material times in this litigation; consequently that rule cannot be considered. Under the law then existing, Ungerman and Edmondson needed no direct court authorization and cannot be considered unauthorized.[10]
 
 
 16
 Weil v. Neary, 278 U.S. 160, 49 S.Ct. 144, 73 L.Ed. 243 (1929), relied upon by cross-appellants does not support disallowance here. That case involved a feesharing arrangement between counsel for the trustee and counsel for many creditors. In Application of Pinetree Associates, 77 F.Supp. 270 (E.D.N.Y.1948), compensation was allowed to a debtor's attorney who was under an agreement to share his compensation with another firm of lawyers. The court allowed compensation relying on the facts that there was nothing surreptitious about the sharing arrangement ('spread upon the records of the court'), the attorneys who were to share compensation actually contributed to the services rendered, and the sharing attorneys at least could be considered 'forwarding attorneys' (within a specific provision of then § 102(d)). These two cases provide no support for cross-appellants' argument based on § 102(c).
 
 
 17
 Cross-appellants' final argument for barring any award is based upon appellants' failure to reveal the contingent fee contract as an executory contract in the statement of executory contracts accompanying the petition of the debtors. Title 11, U.S.C. § 724 requires that the petition be accompanied by a statement of the debtor's executory contracts. However, no authority is presented requiring or authorizing the disallowance of reasonable compensation to attorneys who do not include a contingent fee agreement with the debtor as an executory contract in a statement filed with the petition. Also the failure to advise debtors of their right to reject the executory contract would not prevent the allowance of any fee. See In re Mona Shops, Inc., 106 F.Supp. 471 (S.D.N.Y.1952). It is true, as cross-appellants contend, that compliance with § 724 would have allowed court review of the executory contract at an early stage of the proceeding. However, in this case, we find no compelling logic or legal requirement for disallowing all compensation because the executory contract, disregarded by the trial court, was not disclosed pursuant to § 724.
 
 
 18
 Thus, we find no ground for barring appellants from all compensation in this matter. Next we consider appellants' arguments aimed at receiving an increased allowance.
 
 
 19
 Appellants contend that the trial court improperly failed to consider the April 15, 1971, contingent fee contract in determining its award to them. Initially, appellants argue that the trial court incorrectly interpreted 18 U.S.C. § 155[11] as precluding consideration of the contingent fee agreement. The contingent fee contract was not an agreement between (1) a party in interest or an attorney for such party in interest and (2) another such party in interest or an attorney for another such party in interest; consequently, it does not come within § 155. The trial court erroneously relied on § 155 as barring consideration of the contract.
 
 
 20
 Another ground the trial court relied upon in refusing to consider the contingent fee contract in setting the award was 11 U.S.C. § 96(d).[12] We agree with all parties that to the extent § 96(d) was applicable[13] it did not make the contract void or preclude the trial court from considering the agreement. However, § 96(d) and 11 U.S.C. § 104(a)[14] both prescribe a single test in determining the amount of attorneys' fees; that test is reasonableness. The trial judge properly refused to be bound by the agreement in awarding attorneys' fees. We cannot agree with appellants that the trial judge's role was limited to determining if the contingent fee contract was reasonable or unreasonable. The judge clearly had the responsibility of determining a reasonable fee when the award was sought from the assets of the estate by filing an application for fees. 11 U.S.C. § 104(a).
 
 
 21
 Appellants strongly complain of the trial court's failure to consider the contingent fee agreement as evidence of the reasonable fee to be allowed here. This argument runs into the harmless error rule, F.R.Civ.P. 61. First, it should be noted that this agreement between parties may have involved several considerations which the bankruptcy court would not properly consider in setting a reasonable fee. This was a trial to the court and the court had in the form of expert testimony evidence '. . . that a million dollar attorney fee would be a reasonable attorney fee for the services rendered . . . whether you consider the contingent fee contract or whether you do not.' Consequently, although the contingent fee arrangement might have had some evidentiary value, we cannot say its exclusion is 'inconsistent with substantial justice' and, as there was other evidence indicating that $1 million was a reasonable fee, we cannot see the prejudice to appellants in the exclusion of the contingent fee contract from consideration.
 
 
 22
 The main argument in this case centers around appellants' contention the district court acted arbitrarily and unreasonably in determining the amount of attorneys' fees for appellants and the final amount awarded them is completely contrary to the evidence.
 
 
 23
 The district judge had discretion in the awarding of attorneys' fees in this matter. On appeal, we follow the well established rule that '. . . the District Court's discretion in the allowance of attorney's fees in bankruptcy matters will not be interfered with on review unless the allowance was plainly wrong or an abuse of discretion is shown.' Behringer v. Lybrand & Morgan,270 F.2d 670 (10th Cir. 1959). Appellants cite the following language in In re Herold Radio & Electronics Corp., 191 F.Supp. 780 (S.D.N.Y.1971):
 
 
 24
 Discretion that is premised on the wrong criteria or that disregards wellsettled principles is said to transcend 'the allowable bounds' and is reversible.
 
 
 25
 Appellants argue a plethora of concerns; to avoid unduly lengthening this opinion, we comment on those having the greatest significance.
 
 
 26
 Appellants argue the trial court was arbitrary and capricious when, on one hand, it stated the fee contract could not be considered and, on the other hand, during the hearing encouraged appellants and the debtors to negotiate a settlement of the fee dispute. This particular judicial encouragement of settlement does give rise to some indication that the trial judge would have considered himself bound by any agreement. Clearly that is not proper. However, we see no harm from the comments as they were not acted upon and thus there is no need for reversal on this ground. F.R.Civ.P. 61.
 
 
 27
 Appellants' principal contention is that the trial court failed to remember significant testimony from the hearing a year before when it made the final allowance. The following portion of the record is cited to support that contention.
 
 
 28
 THE COURT: Here is what I am looking at when I say quantum meruit. I have to consider, in the settlement, the obligation that the debtors estate took in order to get the $5 million; namely paying all of Linda Mullendore's taxes, paying all of her obligations and all of those of E. C. the III's, and holding her harmless, completely free, and she ends up with a net of $3 million and the debtors estate had to absorb all of the expenses.
 
 
 29
 I know the necessity of how you negotiated and I commend you. . . . But I'm saying that when I look at the whole picture, there was a lot of giving to Linda in order to get the $5 million.
 
 
 30
 MR. STIPE: Your Honor, I would simply point out this: That although obligations existed, they were liens on the real property and they were debts that this estate was liable for anyhow.
 
 
 31
 THE COURT: Well, I'm not for sure that all of them were.
 
 
 32
 MR. STIPE: The principal ones were.
 
 
 33
 THE COURT: The principal ones, maybe, but there were a lot of personal things that they took on of Linda's, too, that I felt were quite a burden to the estate.
 
 
 34
 Relying on this statement, appellants say, 'The Court no longer remembered, or chose not to mention, that the settlement agreement with Linda Vance Mullendore brought far more to the senior Mullendores than just the five million dollars in insurance proceeds.' Appellants are concerned that the trial judge, in awarding the fee, did not consider the other assets brought into the estate via the agreement. We believe the trial judge simply did not mention the other assets because appellants had so consistently argued the $5 million figure to the court; Judge Barrow had a long and full acquaintance with these proceedings and we will not assume, based on this statement, he ignored the other portion of the settlement agreement in awarding attorneys' fees. Appellants also claim error occurred because there was a lengthy period between first allowing interim fees and the final award. This procedure was not the best practice, but we cannot say it constituted reversible error.
 
 
 35
 Although findings of fact would have assisted this Court in evaluating the basis of this allowance, findings of fact are not crucial here, as appellants argue. The principal finding of fact which would have assisted this Court would have dealt with the actual net value to the estate of the settlement with Linda. On appeal, we are faced with contentions ranging from.$1.4 million to more than $5 million (considering the other assets transferred). This difference, large though it be, in the results allegedly obtained by appellants is not critical. Assuming, arguendo, appellants' contentions concerning the amount received for the estate from their efforts were correct, we could not say the trial judge was required to award 20% of any recovery to appellants nor was he bound by testimony concerning reasonableness of compensation presented by appellants' expert witnesses.
 
 
 36
 Appellants finally contend that well established criteria for determining reasonable attorneys' fees were not considered and that the allowance to appellants was clearly erroneous. Primarily, appellants believe that the contingent aspect of their employment was not considered; of course, the agreement itself is not the basis for this argument. The argument is based on the assumption that appellants would be entitled to significant compensation only if their efforts succeeded in bringing (or assisted in bringing) important assets into the estate. An award of $365,000 to the attorneys for the debtors indicates to this Court that all criteria favorable to the appellants were given full weight.
 
 
 37
 In discussing the amount of allowances to attorneys for bankrupts, a treatise has this to say:
 
 
 38
 Economy is again the guiding principle. . . . In fact, the bankrupt's attorney is usually the courts' favorite object in furthering economy. His fee is ordinarily kept at what has been called the 'lowest minimum' . . . Other courts, however, prefer to consider each case on its own merits, according to the character of the estate, its condition at the time of adjudication, injunctions or restraining orders necessary . . . and the corresponding amount of time and care required of the attorney. . . . Only in cases of exceptional difficulty and complexity does the fee rise to the level of those normally granted to attorneys for the trustee or for petitioning creditors. 3A Collier on Bankruptcy § 62.31(5), (14th ed. 1975.)
 
 
 39
 We recognize that the instant matter involves an arrangement where funds have been available to pay all obligations and return much of the estate to the debtors; this situation diminishes, to some extent, the economical consideration. The amount of this award, however, indicates the trial court considered the contingent aspect of appellants' employment as it related to the results obtained; the size of the estate; the time and labor involved; the results actually obtained; the novelty and complexity of the legal problems involved; the opposition encountered; the experience, reputation and ability of the attorneys involved; and the debtors' ability to pay. See, e.g., Girsh v. Katchen, 382 F.2d 560 (10th Cir. 1967); In re Detroit Int'l Bridge Co., 111 F.2d 235 (6th Cir. 1940).
 
 
 40
 Both parties assert numerous contentions concerning the participation or nonparticipation of appellants in court proceedings, settlements, sales of assets, etc. Appellees argue the award is excessive if appellants' actual work is considered; appellees also contend there was considerable duplication of effort. In response to these contentions, we merely note our reliance on the trial judge, who had an intimate knowledge of all these proceedings, to have given credit where credit was due and to avoid payment for duplicative services. The trial judge mentioned 'overlap' of services as one consideration of which he would take account. However, it is clear that if appellants did everything they claim they did, the amount of this award is not clearly erroneous because of any lack of reasonable compensation. On the other hand, the number of hours which appellants have submitted indicate that the award cannot be held an abuse of discretion for being excessive; compensation of almost $60 an hour appears to be at the high end of compensation for attorneys in bankruptcy proceedings. This case did present some relatively complex matters; the trial court noted that several times there had been the need for diplomacy on the part of the debtors' attorneys in preventing the entire plan from being wrecked. This arrangement has been quite successful in preserving many assets for the debtors and in meeting all obligations including some refinancing. These factors convince us that the trial court did not abuse its discretion in awarding $365,000 as fees for these attorneys.
 
 
 41
 Affirmed.
 
 
 
 *
 Honorable Tom C. Clark, Associate Justice, United States Supreme Court, Retired, sitting by designation
 
 
 [1]
 Edmondson passed away on November 17, 1971. The fees to compensate his efforts were awarded to his estate
 
 
 [2]
 Eugene Mullendore has passed away and Katsy Mecom, the executrix of his estate, is an appellee and cross-appellant. The senior Mullendores were initially debtors in possession under a court order of April 27, 1971. Receivers were appointed by an order filed on May 11, 1971
 
 
 [3]
 In that litigation, the insurance company succeeded in getting Judge Barrow, the trial judge who handled all this Chapter XI proceeding, disqualified because of the inconsistent position it placed him in due to his function in the Chapter XI proceeding. Ungerman was one of the two attorneys appearing on behalf of Judge Barrow. In its opinion, this Court said, 'The preservation of the ranch enterprise under Chapter XI plan has become dependent upon a recovery on the policies.' United Family Life Ins. Co. v. Barrow, 452 F.2d 997 (10th Cir. 1971)
 
 
 [4]
 In his application for allowance of fees, the counsel for the receiver, Mr. Ellison, states: 'That a most important function was performed by counsel (himself) in the reconciliation of the legal differences between the debtor and the widow of E. C. Mullendore, III, in effecting the negotiation of the widow's recorded renunciation of the contract between the widow and the debtors. . . .' Testimony at the hearing on the appellants' application indicated that appellants and Edmondson procured the reaffirmation
 
 
 [5]
 The firm of Oppenheimer, Rosenberg, Kelleher & Wheatley, Inc., became involved in the proceedings in the summer of 1972. In August, 1973, by letter the firm requested the court to enter an order permitting its entry of appearance on behalf of the senior Mullendores and the Mecoms
 
 
 [6]
 At the hearing the trial judge made the following statement concerning the factors he would consider in awarding attorneys' fees
 I look to the complexity of the matter that is before the Court. I look at the results for the creditors and the debtors. I look to the time expended, in detail, and the services of all of those, but I take into consideration what overlap, if any, of services, one to the other.
 I consider primarily that the actions of all the attorneys and trustees are for the benefit of creditors, first, and, the second will be for the benefit of the debtors, because this is a little different than some of the chapters where they have difficulty and not enough money to go around, but in this instance I'm convinced, and as I say, this is a status that is going to end up in a sound position.
 . . . I want you to know that I have to take into consideration, of course, that the Court had employed the firm--Mr. Ellison to represent the bankruptcy, that is the receivers . . . then the debtor, I'm aware, employed the attorneys to represent the debtors separately and apart as representing them in a lawsuit which was a very material lawsuit, a big lawsuit. The Court recognizes that. It was a $15 million lawsuit.
 So I look at all those and I look at the results. . . .
 
 
 [7]
 General Order 44 was abrogated by Order of the Supreme Court effective October 1, 1973. The newly-promulgated Bankruptcy Rules were to take effect on that date and were made '. . . applicable to proceedings then pending, except to the extent that in the opinion of the court their application in a particular proceeding then pending would not be feasible or would work injustice, in which event the former procedure applies.' As the petition required under General Order 44 should have been filed in April, 1971, when the petition and amended petitions were filed, General Order 44 is the applicable rule
 
 
 [8]
 Most of the cases relied upon by cross-appellants as support for disallowance of fees when General Order 44 is not complied with do not involve attorneys for debtors not in possession. In re Progress Lektro Shave Corp., 117 F.2d 602 (2d Cir. 1941), is a case similar to the Hydrocarbon Chemicals case. There the Second Circuit determined the attorney for the debtor performed services of the character to be rendered by an attorney for the trustee; the failure of the debtor's attorney to comply with General Order 44 barred him from compensation except for his services rendered within his duties as attorney for the debtor
 
 
 [9]
 The dissent in Hydrocarbon Chemicals sets out some of the functions of a debtor not in possession during a Chapter XI proceeding
 Even though custody of the debtor's assets and the management of his business may temporarily be entrusted to a receiver during the pendency of the arrangement proceeding, the debtor's continuing activity and initiative are contemplated and required if the arrangement he has proposed is to succeed. Ordinarily, he participates actively in making his proposals workable and acceptable to creditors. Indeed, negotiations with creditors are not likely to succeed without his initiative and active participation. If the plan must be revised, it is his responsibility to do so. If new findancing must be obtained, he usually must seek it. If particular impediments to do so. If new financing must be obtained, or surmounted, he may properly try to accomplish this result.
 Much of a debtor's activity in shaping and reshaping a plan and in removing impediments to its acceptance by creditors is lawyer's work properly entrusted to the debtor's attorney.
 
 
 [10]
 Cross-appellants cite the analysis in 3A Collier on Bankruptcy P62.37 (14th ed. 1975). That treatise forcefully argues that making lack of contribution the crucial test under § 102(c) undermines the effectiveness of the statute. The treatise says courts should deny compensation out of the estate for unauthorized services. In the instant matter, we cannot say Ungerman and Edmondson contributed 'unauthorized' services as we have not been directed to any requirement for prior court authorization of services for the debtor not in possession and the trial court consistently recognized them as attorneys for the senior Mullendores
 
 
 [11]
 18 U.S.C. § 155 provides:
 Whoever, being a party in interest, whether as a debtor, creditor, receiver, trustee or representative of any of them, or attorney for any such party in interest, in any receivership, bankruptcy or reorganization proceeding in any United States court or under its supervision, enters into any agreement, express or implied, with another such party in interest or attorney for another such party in interest, for the purpose of fixing the fees or other compensation to be paid to any party in interest or to any attorney for any party in interest for services rendered in connection therewith, from the assets of the estate; or
 Whoever, being a judge of a court of the United States knowingly approves the payment of any fees or compensation so fixed--
 Shall be fined not more than $5,000 or imprisoned not more than one year, or both.
 
 
 [12]
 11 U.S.C. § 96(d) provides:
 (d) If a debtor shall, directly or indirectly, in contemplation of the filing of a petition by or against him, pay money or transfer property to an attorney at law, for services rendered or to be rendered, the transaction may be examined by the court on its own motion or shall be examined by the court on petition of the trustee or any creditor and shall be held valid only to the extent of a reasonable amount to be determined by the court, and the excess may be recovered by the trustee for the benefit of the estate.
 If, whether before or after filing, a debtor shall agree orally or in writing to pay money or transfer property to an attorney at law after the filing, the transaction may be examined by the court on its own motion or shall be examined by the court on petition of the bankrupt made prior to discharge and shall be held valid only to the extent of a reasonable amount to be determined by the court, and any excess obligation shall be canceled, or if excess payment or transfer has been made, returned to the bankrupt.
 
 
 [13]
 This Circuit discussed the scope of § 60(d) (11 U.S.C. § 96(d)) in In re O'Bannon, 484 F.2d 864 (1973)
 Section 60(d) relates only to attorney's fees for legal services to be rendered in contemplation of bankruptcy and not to legal services to be rendered after the petition in bankruptcy has been filed.
 
 
 [14]
 11 U.S.C. § 104(a) provides in pertinent part:
 The debts to have priority, in advance of the payment of dividends to creditors, and to be paid in full out of bankrupt estates, and the order of payment, shall be (1) . . . one reasonable attorney's fee, for the professional services actually rendered, irrespective of the number of attorneys employed, . . . to the bankrupt in voluntary and involuntary cases, as the court may allow . . ..